21-3252. Good morning, your honors. Good morning. Matt Campbell, Federal Public Defender, District of the Virgin Islands, on behalf of Mr. Henry, I'd like to reserve five minutes for rebuttal. That would be great. It's great to see you, Mr. Campbell.            Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. That's great. Thank you. The District Court correctly found that probable cause was lacking. The District Court erred, however, in finding that the good faith doctrine announced in United States v. Leon saved the otherwise unconstitutional search. Further, Supreme Court precedent dictates that Jacqueline Garfinkel's DNA testimony violated the confrontation clause. Addressing the warrant first. Essentially, three Supreme Court cases all but decide this case. In Illinois v. Gates, the Supreme Court did away with the Aguilar-Spinelli two-pronged test and established a totality-of-circumstances test in assessing probable cause. But more directly, in Alabama v. White, the Court applied Illinois v. Gates to a reasonable suspicion case in which the anonymous tipster had provided information that an individual who was described would be leaving a particular apartment building in a particular vehicle at a particular time, going to a particular hotel, and would be in possession of cocaine. Are you speaking about the good faith deception right now? It bleeds into both, Your Honor. I can get there very quickly. All right. And the issue is whether there was reasonable suspicion in that case, which is a lower standard than we have here of probable cause for a warrant. And the Supreme Court said this is a close case, so it wouldn't have satisfied probable cause, but they found, based on the predictive behavior of when the person would leave, where they would go, what they would be driving in, there was reasonable suspicion. Florida v. JL followed up on that and addressed, I think, what could be described as a bare-bones tip. In which someone described an African-American young male wearing a plaid shirt standing at a bus stop who has a gun. And that was it. There was nothing to confirm. And the Supreme Court said that doesn't establish probable cause either. And stressed the need for special familiarity with affairs, and in particular, the ability to have predictive behavior. That essentially provides where we are in regard to this tip. The district court correctly found probable cause was lacking. The only information that was given was past behavior that could be corroborated. In other words, that Mr. Henry had a brother who was murdered, had a prior conviction, drove a certain car. Law enforcement could corroborate that, but that was all past activity. There was no predictive behavior given. There was no indication of a special familiarity with his affairs. So the district court's probable cause determination is correct. And the government fails to show any facts that would be an unreasonable determination of facts. In regard to the good faith analysis, I think that the— My concern, counsel, is in our stern opinion, we, I think, made clear that we can't assume too much from law enforcement in terms of understanding the nuances of Supreme Court precedent. Why doesn't that apply here? Your Honor, I think that, frankly, the—I would say that the—and I apologize if I pronounce it wrong—the Tutter or Tudor case, T-U-T-E-R, that the court, the district court spoke to, is instructive in this regard. And the difference in that case was that the affidavit had been sworn out before Florida BJL came out. Here, we're 22 years after Florida BJL. And if law enforcement can continue to ignore Florida BJL, then any anonymous tip case will pass muster under good faith. We won't need to have a probable cause analysis anymore. One can simply say, well, this is a complicated area of law, so if you got a warrant, it's good enough. And we are— Why are we focusing on law enforcement? Right? I mean, if I understand your argument, it's the duty, the burden should be on law enforcement to know that this was problematic. And there's Supreme Court case law that undermines that particular argument. Am I miscomprehending your argument, or can you overcome it? I'm not totally certain I understood the court's question. I think the issue under Leon is, would a reasonably trained officer be aware that the affidavit was lacking in probable cause? I think that's the standard that's essentially been announced in Alabama v. White and JL and the cases that follow it. And our argument is that at some point, Supreme Court case law is reasonably well-known to a reasonably trained law enforcement agent. It has to be. Otherwise, Leon, what might be considered an exception— You're, in effect, asking us to overturn Leon. In fact, you do that in your brief, which is a good way to preserve that question. But isn't part of the jurisprudence here on whether or not we look at whether or not the affidavit was still lacking as to whether or not there was any cooperation? And here it seems to me that the cooperative information included Henry's status as a felon. Many people knew that, but that wasn't necessarily on the public record. The type of car he owned, motor vehicle registration data may not be public in the Virgin Islands. I'm not sure the record shows whether it is or isn't. And, you know, the fact that his brother had been shot dead days prior. So the fact that law enforcement cooperated in those three facts isn't reasonable for the officers who believe the additional information provided in the tip was more probable to be true. Respectfully, no, Your Honor. And the district court addressed that in its decision. And it found, as a matter of fact, that none of that information that Your Honor just cited was predictive information. It was all publicly available information. So the district court, in its decision, considered that. And the government has not shown that those factual determinations were unreasonable. So what we have here is a corroboration of information that was publicly available. And the district court correctly found that probable cause was lacking because of that. So I think the only real issue at this point is whether law enforcement can essentially ignore 20 years of Supreme Court case law. But here you have the question, you know, from one of your clients' own testimony from his father. He drove a number of different vehicles. But the tipster indicated that the weapon was likely to be in the Infiniti. And from Infiniti, it was registered to Henry. Well, Your Honor, it— That's predictive, isn't it? No, Your Honor, because just to clarify, the testimony was that— And the testimony was that occasionally at work, other people would move somebody else's car to move big trucks. The testimony was never that Mr. Henry regularly drove other vehicles. So, again, the district court came to the factual conclusion that the car was not predictive information, that the car information was publicly available. There was not testimony that Henry often drove a variety of vehicles? That was not a target? Your Honor, I will have to clarify that point. I'd have to go back through. I recall the testimony that when cars, including his Infiniti, were parked at the work site, they were often moved by various people because of trucks. I would have to clarify the record. I'm happy to do that and submit a 28-J letter to that effect. I haven't memorized it. My notes indicate that that may exist at 585-86, so you may want to check that. But that was not the case, in person. Yes, Your Honor, I will do that. I would briefly like to address the Confrontation Clause issues in very brief. I think Melendez-Diaz and Bill Cumming all that decide this case. Before you get to the Confrontation Clause issue, because it ties into this question, I know in your motion to suppress, you moved to suppress the weapon and the statements that were made. Correct. And, of course, the motion to suppress was denied. I don't think they faced exception. On appeal, it doesn't appear there's any mention about the question of whether or not the statement should have been suppressed. Do you believe that issue continues to be in front of us? His oral statement, whether it should have been suppressed? Yes. And I'll canter no. Okay. All right. I see I'm almost out of time. I can do a brief summary of the Confrontation Clause. Well, you do have extra time when you get back up again. But I'm interested in why this would have been harmless error, even assuming your primary arguments. In regard to the harmless error question, the government raises harmless error. And I think that the facts of this case, particularly the government's closing argument, belie the way of the government's presentation. Does it matter subjectively what the government thinks about the evidence? Should that be the way to do an analysis? I'm not arguing that it's important to the government. I'm not arguing from a subjective point of view that the government's mental state controls. But I think one can infer from the fact that the government stressed in closing 78 septillion reasons to convict in this case. Mentioned it more than once. And I believe if you didn't close with that virtually, it was at the very end of the argument. And we all know about primacy and recency. So the fact that the government stressed this in closing argument, the fact that there was testimony about potential transfer. The fact that they went through herculean efforts to bring people down to testify makes a significant difference. And I'm not arguing that there are 10 controls, but I am arguing that we can infer that that argument was presented to the jury for a reason because it was persuasive. And there is case law that specifically talks about and I cited the United States versus bonds about the infallibility of DNA evidence and the perception that DNA evidence is conclusive. And we all live in the CSI society that tends to teach that. So does that mean going forward, if we adopt the rule that you would seek us to do in this opinion, we would say that if you're going to rely on DNA evidence and prosecution, you have to establish every step in the chain of custody? No, Your Honor. I believe the government tries to conflate chain of custody with confrontation. And if I can briefly explain, I think some important things to understand about Jack. One second. So if that's so and there's a conflation and we're just going to talk about confrontation clause now, then your argument would be that in order to satisfy confrontation in this five-step process, you only need to put on Wong and Garfinkel? Or is it your position that in order to satisfy the confrontation clause problem as you see it, that you have to put on someone at each of the five steps? Your Honor, I think the answer is that if you are going to elicit what amounts to testimonial hearsay from various analysts before the primary analyst who does the math calculations, then yes, you have to introduce those people. And that's why I think it's important to understand what Jack and Garfinkel testified to. Some of the cases presented by the government and the government's arguments seem to indicate that all Jack and Garfinkel did was take a bunch of data and analyze it. And that's not really true. If we look at Apps 698, 699, and 700, she specifically testifies to the steps that were taken, the efforts that were given to minimize potential contamination and mistakes, and that she reviewed their notes. And from their notes, she knows that there were no problems. So in essence, she's testifying to the hearsay that's included in their notes, and it's that testimony. You got to cross-examine. I mean there was an opportunity because all of those witnesses, obviously the people with the samples, the person at quantification, the person at amplification were subject to cross-examination. The only person not subject to cross-examination was Wong, as I understand. Correct, and Wong is the one that performed the capillary electrophoresis, which is the step that actually generates the profiles that are then used to calculate the numbers. She didn't give the answer. The machine gave the answer. Yes, but the problem is that Wong was allowed to testify – excuse me – Garfinkel was allowed to testify to what Wong did, what Wong didn't do. But what she testified to about what Wong did, was it testimony? Absolutely. How so? Because if we look at Melendez-Diaz and Boltcombing, they both talk about how it's not just a question of forensics. There is no forensic exception, and people can lie. They can make mistakes. They can not carry out procedures correctly. So Boltcombing and Melendez-Diaz rejected the proposition that it's just the data that comes out of the machine, and they talk specifically about the need to be able to cross-examine people about how they did their job. Is that more custodial evidence? Absolutely not, because Boltcombing and Melendez-Diaz make it clear that they're not trained in custody cases. They're confrontation clause cases, and that the information that was gleaned there was specifically about what the people did and what they didn't do. And the problem is that because Wong was – excuse me – Garfinkel was allowed to testify to Wong's notes, Garfinkel is then doing exactly what the analyst in Boltcombing did, testifying to somebody else's work based on their notes, which is testimonial hearsay from Wong. The court's been very patient with me. So unless there's questions, I'll sit here. We'll be right at the bottom. Thank you. And perhaps you could look up that, if you have access to it. Thank you. Judge Fisher gave you a page number to look at. Thank you. Now we'll hear from Mr. Barber. May it please the court, Kevin Barber of the United States. If it's helpful to the court, I can take the issues in any order, but perhaps I could circle back to the Fourth Amendment issue. The government certainly strongly agrees with the district court's ultimate conclusion here, that the motion to suppress needed to be denied pursuant to the good faith exception to the warrant requirement. Before you get there, I'm interested. Did the district court accord the magistrate judge sufficient deference on this probable cause determination? No, Your Honor. That's central to our argument that even though the district court did get it right on good faith, the court got it wrong on the threshold of probable cause determination. The question when you review either the district court or this court reviews a magistrate judge's decision to issue a warrant is simply whether the judge had a, quote, substantial basis. Is that before us, though? Properly now on appeal? It is before us, yes. We didn't have to cross appeal to raise that issue. That's from this court's Ritter case because we're not challenging any part of the district court's ultimate judgment. We're just challenging the reasoning, the way it got there. And I do think it's an important point that the court did err on the threshold of probable cause inquiry because of that deferential standard of review. I think it's important for the district courts within the circuit to know the deference that they are to accord magistrate judge determinations. The fact here is that we had an anonymous tip that obviously by itself would not have sufficed to provide probable cause, but this tip was corroborated. And it didn't provide, to clarify, from my friend Mr. Campbell's point, it did not provide the kind of readily observable information that was found lacking in the J.L. case. So that case does not control. That's also very relevant to the good faith inquiry, as you know. The information that was provided by the tip here was very disparate. As Judge Fischer was discussing, it involved different aspects of Mr. Henry's life, his criminal history, the make of his car, who his brother was, what had recently happened to his brother. So I think when you have a tip that even if it's non-predictive, if it includes that kind of disparate, personalized information about the suspect— Does it matter that it was all verifiable public information? I think it is relevant that the information was theoretically discoverable by a member of the public. My concern with the district court's decision is that the court gave too much weight to that fact. The fact is that there are always speculative possibilities. For example, if you look at the Gates case, it was possible in that case that a vindictive travel agent had concocted the tip against the married couple in that case. But the mere speculative possibility that that could be the case is not enough to defeat probable cause. Same here. You could theoretically have someone who did the research necessary to concoct this tip, but that mere speculative possibility doesn't preclude probable cause, especially when we're on the kind of deferential standard overview that applies here. So probable cause was present here. The warrant was legally valid. But in any event, the good faith exception clearly properly applied. As this court noted in the Stern case, whenever the probable cause determination requires the kind of extended analysis of Supreme Court precedent, this court's precedent, out-of-circuit precedent, the synthesis of those precedents, it's almost certain that the good faith exception is going to apply. And another correction I wanted to make to my friend's statement, the standard for the relevant prong of the good faith exception is whether it would be entirely unreasonable to rely on the warrant for law enforcement. And here, I don't think that standard can be met at all in light of the lengthy analysis that was required for probable cause. So I do think that the good faith exception applied. And if the court has no questions on that, I'm happy to discuss the confrontation issue. Well, help me on the confrontation issues and stuff. I'm going to move into that. Your friend is relying on Melendez-Diaz and Volker. Obviously, the two critical cases here. You have vastly different views on the implications of those cases. But where I wanted to begin was the notion that the error below is with regard to Ms. Huang and the fact that Ms. Garfinkel's testimony regarding what Ms. Huang did was testimonial. And really, we should think about the chain of custody and put that aside. So number one, the two cases find us here. Number two, is it, in fact, testimonial and therefore problematic? Got it, Judge Greenway. So first of all, I certainly agree that Melendez-Diaz and Volkermann are highly relevant here. But they're relevant because of how distinguishable they are. The problem in each of those cases is that you had an out-of-court testimonial statement. In each case, they were essentially certificates of analysis or affidavits about the results of DNA testing. The problem is that the people who – the analysts who authored those reports and signed those reports did not appear as witnesses at trial. So the key and stark distinction between this case and those cases is that here, number one, no report was introduced. And number two, even if the report had been introduced, the author of the report, Garfinkel, testified. So that takes us completely out of Melendez-Diaz and Volkermann. And I do agree that chain of custody issues, foundation issues are distinct from the confrontation clause. That's why I make so much of footnote one from Melendez-Diaz. Here, there was no testimonial out-of-court statement that was made by Lily Huang that Ms. Garfinkel was testifying about. My friend makes much of the notes that were provided to Ms. Garfinkel. If you look at page 700 of the appendix, Garfinkel actually testified that there were no notes. I think she meant that there were no notes indicating that anything had gone awry in the testing process. Even if you had had a note that Garfinkel testified about the substance of a note that was made by Garfinkel in the course of testing the DNA, that note would not have been testimonial within the meaning of Crawford v. Washington. But again, that's a hypothetical because we didn't have a statement by Huang coming in through Garfinkel's testimony. So I suppose your friend would push back and say that the fact that Garfinkel is testifying about the testing, the autophoresis that Huang did, that that in and of itself would be testimonial and then bring it within Crawford et al. Yes, exactly, Judge Greenaway. I take Mr. Campbell to be arguing that the fact that Garfinkel wasn't physically present and didn't conduct those steps of the testing herself means that those actions in the lab were testimonial and that Garfinkel can't testify about them. The key distinction here, the reason why that argument is wrong, is that that's an argument about foundation and about Garfinkel's personal knowledge. And that's a different issue. That's not a confrontation issue. Here, even an objection based on personal knowledge wouldn't have worked because Garfinkel was testifying as an expert witness, and the rules of evidence specifically exempt experts testifying as experts from the personal knowledge requirement that normally applies. But it's not a confrontation issue. That doesn't create a confrontation clause problem. And that's the point of footnote one of Melendez-Diaz. And that's why I think here today you've heard Mr. Campbell pretty forthrightly urge this court to adopt a rule that would require every technician involved in the DNA testing process to testify in order to bring in the results of the testing as evidence in compliance with the confrontation clause. That's why the court has all but rejected that potential rule already. I think this is really a conflation, right? Because if the primary argument were a chain of custody, then there might be a whole new test throughout the federal system that could be problematic. But then there might be an argument about Ms. Huang not testifying. But because Garfinkel was testifying as an expert, it makes Huang's potential testimony not necessary. Because otherwise, in every case, drug cases of every type, you'd always have to have everyone engaged in any testing testify. Correct. Yes, I think the implications of Mr. Campbell's position would be far-reaching. I think it would mean that any time an expert witness, for example, relied upon research assistants in the course of preparing for his testimony or drafting a report that was going to be introduced into evidence, those research assistants, because they participated in the process of and causally facilitated the testimonial statements being made at the trial by the expert, then those research assistants, all of them would have to be brought in to testify at trial as well. There's no support in the case law for that rule whatsoever. It would be a very harmful rule to law enforcement and to the use of this very important DNA evidence. But yes, Judge Greenberg, I think the key problem is the conflation of the confrontation clause with issues of chain of custody, foundation, and personal knowledge. Those are distinct concepts, and the Supreme Court has made that quite clear. The court has also made quite clear in Melendez-Diaz and Bull Cummings and even in Williams v. Illinois across the various opinions that an all-analyst or an all-technician's rule in this area is not appropriate and is not necessary to comply with the confrontation clause. The government is by no means seeking an exception or forensic testing to the normal confrontation clause principles. We would simply ask that the normal confrontation clause principles established in Crawford and in subsequent cases be applied here. Let me follow up with one other question. Let's say, for a moment, hypothetically, that Garfinkel was not deemed an expert. So she was another person in the chain of custody. I understand the distinction you're drawing between her providing expert testimony as opposed to purely fact-based testimony. But let's assume for a moment she's not an expert. She's just fact-based testimony. Would that present – and she – assume also that she would – the substance of her testimony would be similar to what it was that you take out an obvious opinion testimony. Would that – in that hypothetical, that would create a confrontation clause issue? No, Your Honor. To be clear, I don't think that her status as an expert witness or a lay witness is relevant to the confrontation clause issue. It could be relevant under the rules of evidence to the personal knowledge that would be necessary on her part. So maybe she wouldn't have been allowed to testify about – in the way that she did at this trial about, you know, what went on in the lab when she wasn't there. But that's not a confrontation issue. That would be an issue under the rules of evidence, and that's not an issue that my friend is presenting on appeal today. So I don't think that the expert issue is relevant to the confrontation clause issue. Are there no other questions? I'm happy to do the voting. Thank you, counsel. Thank you. Good morning again. Before I forget, I did review in regard to Judge Fischer's question. I noted that on app 587 there is a reference that Mr. Henry would sometimes drive his father's Toyota Highlander. I think that was the reference that Your Honor was taking. And I think 586 shows he drove some other vehicles. Yes, so I concede Your Honor's question about the other vehicles. I'd like – since most of the argument was centering on the confrontation issue, I want to clarify a couple of points. I don't think the court needs to reach the question as to whether, as Judge Fischer had mentioned, numbers spit out of a machine are testimonial. The court does need to reach the question of whether notes that someone took while they're performing tests that identify whether or not problems occurred is testimonial. And that's the problem that we have here. This isn't just a time where an expert gets some data and analyzes it. The expert was allowed to testify that the lack of notes meant that all procedures were followed and there were no problems. And that's what graphical testimony is. Doesn't that allow you to argue that less value should be accorded to the expert's opinion? You want to argue that's a slip shot, then you have that argument. But that doesn't – that shouldn't prevent that testimony, right? Because experts look at notes at various times. You could have had a competing expert look at the photoresis and the quantification and the amplification and said there are problems that the notes present in my opinion. And that's why, despite the septillion argument of the prosecution, we should disregard it. But for Melendez-Diaz, that might be a persuasive argument. But the court in Melendez-Diaz and then followed up on in Bollcombing specifically rejected the notion that there may have been other ways to get valuable testimony for the defense, such as the defense could have subpoenaed people. Or this may not strengthen the evidence if the government presents hearsay evidence. The court rejected that and said confrontation is the procedure that the Constitution requires. And here confrontation was lacking because Wong could not be testified about what Wong did. And Garfinkel was allowed to testify about what Wong did. Now, the government takes issue and says that – When you say what Wong did, do you mean the substance and accuracy of what Wong did? Or do you mean that the expert could not have relied on the – what are proper inferences from what Wong did or didn't do? The expert was allowed to testify as to what procedures they had to avoid contamination, how they cleaned their workspace, how they kept different items separate, et cetera. And the expert was allowed to testify, I know that Wong did all of those things because Wong would have written notes if there were problems. So the lack of notes became substantive testimony. I think it's clear that had Wong actually testified, that would have been a right subject for cross-examination. And if the attorney had asked those questions and the court sustained an objection as irrelevant, that would have been a confrontation violation. I don't understand. If Garfinkel is subject to cross-examination on why the presence or absence of particular actions by Wong lead her to make particular conclusions, why is there a confrontation? Because she's testifying to what Wong did. She's testifying – Wong did X. I think X is appropriate. But she was allowed to testify, I know that Wong followed all the correct procedures because there is nothing in the notes that says she didn't. And in Melendez-Diaz and Bullcoming, the court stressed that we don't just accept that analysts or forensic people do the right thing all the time. They could be sloppy. They could be incompetent. They could lie. And we can't test that in this case because Wong didn't testify. And the jury never got to see Wong's demeanor when she was asked, were you sloppy? Did you lie? Mr. Campbell, I'm not sure from looking at the record what Garfinkel testified to and what Wong may have testified to had she been there as a witness. But going back to Judge Shigeru's question earlier, if you acknowledge that Henry's admission that he possessed a gun is probably before us, why isn't whatever may have been a problem with his confrontation cause question harmless there? Well, one of the issues that came up was and I'm not bringing this as a legal challenge to the admissibility, but I think the trial attorney was fully allowed to question the reliability of Mr. Henry's statement. And one of the issues that came up was how the firearm came into Mr. Henry's possession. And Mr. Henry, in his statement, says that he got it from Pongo. Yeah, right. And at the time that and it was also determined that the firearm came from the V.I.P.D. You know, I don't know that any of that contradicts his admission that he possessed the weapon. Well, it contradicts the idea if his statement is I got it from Pongo and Pongo was dead. Right. At the time that when we know that fire on somebody else or he forgot where he got it from possession or his source source isn't the element is possession, but it completely undercuts. In order for that evidence to be powerful evidence for the jury, they have to believe it. And we know that what he said wasn't true. It's nobody can dispute that Pongo was dead at the time and he would have got that. Mr. Henry could have gotten the firearm. So we know that his statement. I'm not sure whether what he said was true or not true discredits his own admission of knowing possession. And if that's the case, I don't know how this I don't know why this wouldn't be harmless there. If I could make two more points, it'll take me just a few seconds. I understand your question, Your Honor. The best answer I can give you is we know that what Mr. Henry said wasn't true. OK, it's the monster. That's the answer to my harmless air. Yes. The other two points I did want to make. There was some talk about whether the fact that Garfield was an expert makes a difference. And while I hesitate to cite to the Supreme Court's decision in Williamsville, Illinois, because it's so fractured, five justices rejected the notion that testimony can come in as an expert in order to evade confrontation clause issues. The last point I will make, barring any questions, the government asserts that we are making a sweeping argument. I would assert that the government is making an equally sweeping argument that in a case like this, nobody in that chain of testing needs to testify and that all the government needs to do is put Garfinkel up and Garfinkel would be allowed to testify to every step that everyone actually took, what they did, how they did it, that it was accurate, that there were no problems. The government didn't need to call any of these three people, according to the government. All I have to do is call Garfinkel to testify about our calculations. Let me ask you the opposite of that. May I presume, based on what you said today, that if Wong and Garfinkel were— I'm giving you two hypotheticals. Let's say Wong was the only witness. That would have been sufficient, because there would have been a hand for a testimony, so put that aside. Suppose it was just Wong, on the one hand, and Garfinkel, and nobody on quantification, no one on amplification. Obviously, you'd have the people who collected the samples. Yes. So the question is, would Wong and Garfinkel have been enough? Yeah. I think, based on the substance and circumstances of Garfinkel's testimony, no, because Garfinkel was allowed to testify to what was actually done in the lab when she wasn't there, what steps were taken, that there were no problems, but through each step. So in this case, the collectors and then each of the three steps plus Garfinkel would have had to have testified to satisfy confrontation. If Garfinkel is going to be allowed to testify to what they actually did and how they did it, yes, because that's testimony. They're doing those things to prosecute Mr. Henry, and they're reporting. The substance of Garfinkel's testimony would change if Wong testified. Right? But you're saying, as a general matter, the opinion we have to write is that, in order for this not to violate the confrontation clause, all the three science witnesses, we'll call them for the moment, and Garfinkel would have had to have testified. I think, based on the testimony that was elicited from Garfinkel, correct. All right. Thank you. I thank the court again for its patience. Thank you. We'll take this case under advisement and thank counsel for their excellent written and oral arguments today. It's great to see you. We wish you well. And we'll ask the clerk to adjourn. Please rise.